All right our next case is consolidated and we have Mr. Magg for the appellant and Mr. Vanderland, is that correct, for the athlete. Get yourself ready and when you are ready you may proceed to the argument. There are a lot of cases here so I don't know. Yes. A lot of issues to say but some don't. May it please the court, my name is Thomas Magg and I represent Elizabeth Watkins and five other ladies that the court noted similar claims. This is six cases that are very similar in their facts brought by different plaintiffs, all beneficiaries of general assistance in Saline County or Saline Township, against now Saline Township is the sole remaining defendant. The broad general fact in common with all of these cases is that there was a supervisor of general assistance named Alvin Steiner that took it upon himself to take certain liberties with I believe the evidence is all but two of the female beneficiaries of general assistance in Saline Township during the time period. The six plaintiffs in this case brought suit, some with more recent claims than others, all of which claimed varying degrees of harassment based upon their gender. Three counts were brought generally that are relevant to the appeal here today and not all of them were brought in all six cases due to statute of limitations issues. Those three relevant counts that were brought generally in all of the cases are premises liability counts, Civil Rights Act of 2003 counts, and Gender Violence Act counts. The Gender Violence Act and the Civil Rights Act being statutory enactments relatively recent for the law. Premises liability being while there is a statute on it, it's fundamentally common law liability. The premises liability, all counts against Saline Township were dismissed on the pleadings, we never got to trial, it was not summary judgment, it was all on the pleadings. The arguments of the defendant Saline Township as to the premises liability counts was that the plaintiff had not pled some defect in the building where most of these assaults took place. And that's true, we didn't plead that there was a cracked floor or the ceiling was too low or something like that. But what we did plead was that there was a dangerous condition on the premises, i.e. Mr. Steiner, who we pled that Saline Township had knowledge engaged in these activities. And we have cited in our briefs case law from across the country and Illinois, Crosser and Keaton on torts, which is of course the Bible quote-unquote tort law in this country, saying that it is entirely possible to have a premises liability claim based on something other than a physical defect in a structure. Now what's the case, because you cite this Crouch, Stark and Gill for the proposition that you just argued, and they say that applies only to the condition of the premises. In the sense that being present on the premises for firing rifles at passing motorists is on the premises, that's true. It's not necessary for there to be, for instance, a hole cut in the side of the building to allow someone to fire out of, or it's not necessary to have a secret room in the basement where these molestations would take place. The fact that Saline Township knew that these criminal attacks were taking place on their premises is sufficient to make the premises liable. What does a criminal attack have to do with, what does the condition of the building have to do with a criminal attack? Totally separate. The condition of the building is one type of liability that the premises owner should guard against. The other is the presence of a known criminal on the premises, and we cite a case to that effect. What is that case? Is that Hargan? I believe so. But the presence of a known criminal on the premises gives rise to a duty to protect against that known criminal. By the opposite token, had Saline Township and the facts ultimately shown that Saline Township was unaware of these criminal offenses, then there's no liability, but we're not at that stage yet, and the plaintiffs in this case have pled that Saline Township had knowledge of this. And I think ultimately we could prove that trial. There's a know or should have known? Should have known is a standard. We plead knowledge. The defendant cites a Central District of Illinois federal court case for the proposition that it has to be some defect in the structure itself. As is noted in my brief, that's a federal trial court decision. Even in the federal system, that's not precedential. And as our Supreme Court has noted, state courts in Illinois are not bound by federal decisions, especially on state law issues such as that. The defendant has also cited Berndine v. Glendale Heights. That case is distinguishable. In that case, it's a lawsuit against Glendale Heights in connection with a swimming pool patron jumping into a swimming pool. The allegations in that case were simply that the lifeguards had jumped. There's no allegation that anybody knew that that was dangerous. And the decision itself, if read, takes more issue with the fact that nothing was pled than as a matter of law, you could not have pled. So I would submit that Berndine, which is, I believe, the defendant's primary case on the premises of liability, is simply inapplicable. Berndine was a pleading's case. As far as the Gender Violence Act goes, I want to make very clear, because there's some argument back and forth in the briefs, we are not pleading vicarious liability as part of the Gender Violence Act. The Gender Violence Act gives rise to liability on two separate sets of, we'll call them persons. One is the person who actually commits the physical assault or battery. The second is any person that assists or encourages the assault and battery. In this case, it was Mr. Steiner who personally, physically did the touching. But the allegations in this case is that Salem Township assisted Mr. Steiner. The issue this court has to decide, and the basis for the dismissal by the trial court, is that a township entity cannot be a person for purpose of the Gender Violence Act. As near as I can tell, there's only one case, appellate level case, that even discusses the Gender Violence Act. That appears that it could have been decided by that first district case, but the first district case, as my briefs note, didn't decide that issue. It found some other way to rule on the case. So, this is an issue of first impression to this court. The plaintiffs in these cases... Do you believe that if the, to force to apply the act that you would have to allege and prove that the defendant assisted Steiner in his misconduct? I believe assist is the word used in the statute, yes. So how did they, what facts would you have to show that he assisted Steiner in attacking his people? What is pled in the complaint, and thus must be taken as true, is that the township would close the office during business hours so that there were no witnesses when Steiner would engage in his conduct, that they provided him office space in which he could do this, that they took no steps whatsoever to prevent him from doing this, and basically allowed him free reign to do this, and thus, in that way, assisted him. But I think the primary issue on the Gender Violence Act count is whether, as a matter of law, a non-natural person, be it a corporation, an LLC, a township, or city or county, can be a person under the statute. And based on the briefing, I think that it can. The third count is the Civil Rights Act of 2003. The Civil Rights Act of 2003 holds that no governmental entity, paraphrasing, can either exclude a person from participation in, deny a person the benefits of, or subject a person to discrimination under any program or activity on the grounds of various listed prohibitions, gender. They also cannot utilize criteria or methods of administration that have the effect of subjecting individuals to discrimination because of the various factors, gender. In these cases, where there is a Civil Rights Act count, which I didn't follow, the allegation is the Salem township adopted a policy which required female applicants for general assistance to submit to this conduct in order to get their benefits. That points squarely into the Civil Rights Act prohibition, which is expressly, on its face, privately actionable, and provides a remedy. Privately actionable is who? The local governmental entity. If the defense claims that the township supervisor is the exclusive administrator of the general assistance program and not the township. That is what they argue. I have been unable to find any governmental entity called the township supervisor. I have found an office at Salem Township called the township supervisor, just as I have found that there is an office of the Chief Justice of the Illinois Supreme Court, but there is not a separate governmental entity called the Chief Justice of the Illinois Supreme Court or the township supervisor. But yes, the township supervisor does have some policymaking functions, but the policymaking functions of the township supervisor are those that make the policy for Salem Township. So, in essence, Alvin Snyder, the physical perpetrator of these acts, is the one who sets the policy. And based on the pleadings in this case, which we must take as true, which are patterned on classic Monell pleadings in 1983 cases, the township has a policy that requires female applicants for general assistance to subject themselves to these actions in order to get their benefits. Although at a certain level, it doesn't matter that they're general assistance beneficiaries. They could be UPS delivery drivers. If Salem Township had a policy of doing this to any female that walked in the door for any other business, the fact that they were there for general assistance is just what these have in common. I don't know, and the record is silent because we never got into it, on whether there's anyone else that this happened to that wasn't on general assistance at Salem Township. We know it happened to the general assistance beneficiaries. We just don't know who else it happened to. On some of the cases, there are statute of limitations issues. Some of those arguments are being made simply to give the Supreme Court the chance to reconsider their position or their holding in Paszkowski. I don't think this court has any power or authority to overrule the Supreme Court's decision in Paszkowski. Again, we're just making that for the record because we could not, and I think we're pretty clear about that fact in the briefs. We can't petition to go to the Supreme Court without at least referencing it here. For the record, I ask you to overrule Paszkowski, but I recognize you can't. Others of the statute of limitations issues, I would simply note that claims were dismissed on statute of limitations grounds that include claims that were within the one-year statute of limitations, and I think that should be reversed. Unless your honors have any questions, I'll address you on the vote. Thank you, counsel. Thank you. We have the opportunity for a vote. Ms. Vanderland. Good morning. Thanks to the court. On behalf of Salem Township, your honors, I will first address the premises liability case argument in that regard. The trial court dismissed that, and the first issue I want to address is as to whether or not that issue and counsel and plaintiff's arguments on that issue have been weighed at this level. In that regard, during the trial court proceedings on the consolidated motion to dismiss, which is the motion that was heard and which you guys are reviewing here today, in the response brief, the plaintiffs indicated that they would concede a dismissal of their premises liability count, which should address whatever concerns the defendant was trying to read into a failure to supervise claim being pleaded. In addition, at the actual hearing, providing further opportunity to argue the premises liability claim, the court asked counsel or plaintiffs, I'm just going under theories. Is the premises liability counts? And we've had some off-record discussions, and that actually is a new theory that was added in these amended complaints, and plaintiff concedes on the motion to dismiss on that. Is that correct, Mr. Magg? That is correct, Your Honor. So the issue here is, what is this court going to review as to the decisions of the lower court in coming to the conclusion to dismiss the premises liability claim, other than the fact that counsel for plaintiff and plaintiffs conceded dismissal of the premises liability claim. So now all of the arguments that are being made before this court are arguments being made for the first time. And I would submit, respectfully, that this court is not a court of first impression to decide those arguments that should have been made in the lower court. And on that basis, we would submit that the arguments raised on premises liability to this court have been waived, and that the trial court's decision dismissing that count should be affirmed. Mr. Magg disputes that and says he conceded it was being dismissed, but he was going to wish to challenge the existing case law in the future on appeal and not preserve it. That was on issues not relating to premises liability. That was the premises liability. Correct. Alternatively, however, on the premises liability count, we would submit the trial court's decision should be affirmed because this is not a premises liability claim. As counsel for plaintiff already indicated, the only alleged condition to be at issue here is Mr. Steiner himself. Under the Tort Immunity Act, the township would be provided immunity for any condition on the premises that causes an injury unless there is actual or constructive notice of the condition of the property that it was not safe and that that actual or constructive notice came within a reasonable period of time. A condition of the property, not a person on the property. That is the language of the Tort Immunity Act. In addition, if you look at the Supreme Court's decision in Teeters v. Clement, they addressed whether or not a premises liability claim could arise out of an incident where a minor was shot by a pellet gun found on the property. The minor was shot by another child or person on the property. And the Supreme Court said that that is not a condition of the property. That is an activity that occurred on the property, but not a condition of the property that gives rise to a premises liability claim. There's all other, many other sources that you can look at. Obviously, we cited to the Doe case, which is a Central District case, I concede, not binding on this court, but it's certainly illustrative of the reasoning that this court could apply. Again, that was a case where first-graders, the parents of first-graders, were bringing a claim against the school district alleging that their first-grade teacher was sexually abusing and engaging in other sexual activity with a pellet gun. The court, relying on Illinois law, said this is not a premises liability claim. There's no allegation here that there was something defective about the schoolroom itself that caused the minor's injuries. It was the acts of the teacher himself. And therefore, that is not a condition of the property. It doesn't give rise to premises liability. We can also look at the IPI instructions relative to premises liability. It says the first element is there has to be a condition of property building, something of that nature. And then if you look at the comments section, it says if the injury arose based on inactivity on the property, or the actions of a person on the property, go to negligence. You have to go to the negligence instructions. So there's all of these sources that tell us this definitely is not a premises liability case. The trial court's decision dismissing this claim should be upheld in that regard. I next turn to the gender violence claims. And all of the plaintiffs that issue in this appeal brought the gender violence claims, I believe. And the issue, one of the issues, obviously, is whether or not a governmental entity, a local governmental entity, such as a township, can be subject to liability under the Gender Violence Act. In other words, is it a person? The Gender Violence Act requires that a person be subjected to gender violence by another person or by a person who is assisting in the acts that give rise to gender violence. So our position, obviously, is you have to be a person to receive gender violence. Obviously, a local governmental entity couldn't be the subject of a sexual act or a sexual abuse. In addition to that, you have to be a person, a human being who's actually perpetrating those actions. And in order to get to that, and in looking at statutory construction, we're looking, what was the intent of the legislature when they were enacting the Gender Violence Act? The intent was to address issues of domestic abuse and sexual abuse, quite frankly, by men against women where there might not be a criminal prosecution for whatever reason. Maybe there's not enough evidence on the criminal side, maybe the state's attorney doesn't want to proceed. It gives a woman an opportunity, an avenue, to pursue a civil claim for those types of actions. And that's why it was enacted, to address domestic violence and sexual abuse. So then you go to the criminal statute. That's what it was enacted to prevent. It talks about a violence of a human being against another human being. If you look at the sexual assault statutes, it's the acts of a he or she against another he or she involving sexual acts. So definitely the gender violence statute was enacted to address the acts of human beings, not governmental entities. Again, I would refer the court to the Doe case. That case had a lot of similar claims that we're dealing with in this case. And in that case, they brought a hate crime claim under the Illinois hate crime statute. And that statute provides for a cause of action against a person who commits, for example, battery that is motivated by a particular protected category, which in that case would have been gender. And the issue that the parties were arguing in that case is, well, is a school district, a person? And the plaintiff said, yes, a person. The defendant said, no, not a person. And the central district court said, I'm not even going to get to that point. It doesn't matter because the only way that the school district could ever be held liable under the hate crime statute would be through the acts of its employees or its agents because the district itself can't act. It has to act through its employees and agents. So therefore, the only way it can be held liable is vicariously. It doesn't matter whether it was pled in the case. That's the only way it can be held liable. And the court said the actions being alleged, sexual misconduct, things of that nature, those are never within the scope of employment in a situation like this. That would always be beyond the scope of employment. And so the school district cannot be held liable under the hate crime statute because the acts that would be necessary to trigger liability would be outside the scope of employment and therefore no vicarious liability. So in this situation, number one, Saline Township is not a person and cannot be subject to liability under the gender violence act. In addition, even if you were to disagree, the only way that Saline Township could be held liable for assisting or encouraging gender violence would be to act through its employees, whoever those are, or through its elected officials, whoever those are. But some human being has to act to encourage the sexual misconduct that's being alleged in this case. To encourage Mr. Steinhardt to allegedly request sexual favors in exchange for general assistance. That, in no circumstance, could ever be within the scope of any employee or public official's duties. Saline Township and its citizens never signed up for having elected officials engage in sexual misconduct in exchange for public benefits. And so, for that reason alone, there could never be liability under the gender violence act. So, for both of those reasons, we would submit that the trial for its opinion dismissing the gender violence act also be dismissed. That gets us to the Civil Rights Act of 2003. As has already been talked about, and I believe there were a couple of questions, our point in this is that Elvin Steiner, who's the alleged harasser, discriminator, what have you in this case, was the sole and had the sole authority to administer the general assistance program. This isn't me saying it. This isn't the lower court saying it. This is the general assembly passing a statute, both under the public aid code and under the Township Organization Act, that says a supervisor of a township is the ex-official supervisor of general assistance and has the authority to administer the general assistance program. And I've cited many different cases, not within this district, but in other districts, talking about what does that mean, so what authority then do they have? Well, the supervisor has the authority to determine eligibility requirements, to make, in fact, is ordered under the statute, to make payments, to take care of the poor, to make restrictions and things of that nature on when payments can be made, who is eligible, things of that nature. He's the guy who actually sits in the office with the recipients and decides who is eligible, how much they're going to get, and gives them their check. Nobody from the township has the authority to do that. The statutes make it clear, and the township only has the authority that is provided to them by the legislature. And there has not been one statute cited in this appeal or in the lower court that says a township has the authority to make these disbursements of general assistance. And when you look at the Civil Rights Act of 2003, how is their liability? Well, it has to be liability in the discrimination in the providing of benefits. Well, if the township couldn't provide the benefits, how could it ever discriminate against the people receiving the benefits? Mr. Steiner was the defendant who was sued in this case for the acts that are alleged. He is the person who was engaged with the plaintiffs in providing general assistance benefits. How do you respond to this claim that the statute on statutes says that persons apply their bodies publicly? On the Gender Violence Act? In that regard, the statute on statutes does say that. However, it also says this isn't the be-all-end-all. You've got to look at the actual statute and look within the statute. Again, under the Civil Rights Act, the township had no authority to administer the very benefits that the plaintiff is claiming they were discriminated against in violation of the Civil Rights Act and therefore cannot be liable under the Civil Rights Act. Statute of Limitations issues would be my last argument in that regard. First off, the court should know this only applies to two of the plaintiffs, Ms. Berry and Ms. Ritchie. As to Ms. Berry, in her complaint, she alleges that she ceased receiving general assistance benefits in 2006. She didn't file her complaint until March 1st of 2010. The issue on the Statute of Limitations is, number one, does the Tort Immunity One Year Statute apply? Under the Gender Violence, I believe it's a seven-year statute, does that apply? Or, under the Civil Rights Act of 2003, does the two-year statute apply? As to Ms. Berry, it doesn't matter whether the Tort Immunity or the Civil Rights Act applies, she files her complaint past the deadline for both of those statutes. As to Ms. Ritchie, she alleged benefits ceased in August of 2008 and filed her complaint  18th of 2010, so the issues do apply more to her. In that regard, we cite the Paszkowski case. In that case, the Supreme Court said you have to look at the intent of the legislature in enacting the statute. That happened to be, I believe, a construction statute case, but in any event, it said the Tort Immunity Act and the language used by  makes it very clear in that act, it says any civil action filed in the state of Illinois, whether based on common law, statute, or the constitution of the state of Illinois, for injuries must be filed within one year. Paszkowski said that language is so specific in controlling and it looks at the intent of the legislature, and for that reason, we would submit that that is a statute that has to apply in this case. Now, I can see it, obviously, the Civil Rights Act of 2003 has a two-year statute, but I believe the Supreme Court has made it clear that the Tort Immunity statute is going to apply on claims brought against local public entities, and at this point, I guess we're missing all of these claims as to all plaintiffs at the appellate court. I would note that the Tyler v. Clements  the pellet gun case cited by the defendants, yes, that the fact that a pellet gun was being fired on the premises and resulted in injury may have been activity as opposed to a dangerous condition, but in this case, we have cited Croucham and Gill, both of which are cited in our brief, which holds I'm going to be quoting Gill, which is citing Croucham, the possessor of land that has a duty to protect the defendants from criminal attacks, but only when such attacks are reasonable, foreseeable, and the burden of preventing such attacks can be reasonably placed on the defendant. In this case, criminal attacks on the defendant are   foreseeable, but the burden of preventing such attacks can be reasonably placed on the defendant when such attacks are reasonable and have been determined to nah such as so have been be approved in a law. And legislation states that   must be convicted of murder. Thank you, your Honor. Thank you both for your brief arguments. The court will take the matter under advisement, so it's decision. We'll witness the